IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| **JULIE MAYHEW**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. _____ |
| | ) | |
| **STARKE COUNTY**, by and through its | ) | |
| Board of Commissioners, **DON BINKLEY**, | ) | |
| individually and in his official capacity as a | ) | |
| member of the Board of Commissioners**,** | ) | |
| **MARK GOURLEY**, individually and in his | ) | |
| official capacity as a member of the Board of | ) | |
| Commissioners, **RACHEL OESTERREICH**, | ) | |
| individually and in her official capacity as | ) | |
| Starke County Auditor, **WILLIAM DULIN**, | ) | |
| Individually and in his official capacity as | ) | |
| Sheriff of Starke County, **JACK ROSA**, | ) | |
| individually and in his official capacity as | ) | |
| Sheriff of Starke County, **DANIEL BYRD**, | ) | |
| individually and in his official capacity as | ) | |
| Deputy of the Sheriff of Starke County, | ) | |
| **JACK HUDGENS**, individually and in his | ) | |
| official capacity as Chief Deputy of the Sheriff | ) | |
| of Starke County, **CHAD McDONALD**, | ) | |
| individually and in his official capacity as | ) | |
| Deputy of the Sheriff of Starke County, | ) | |
| **TONY BLACK**, individually and in his official | ) | |
| capacity as a member of the Starke County | ) | |
| Council, **DAVE PEARMEN**, individually | ) | |
| and in his official capacity as a member of the | ) | |
| Starke County Council, | ) | |
| **PAMELA McDONALD**, individually and in | ) | |
| her official capacity as Matron/Officer | ) | |
| Manager of Starke County Sheriff's Department, | ) | |
| **APRIL WILHELM**, individually and in her | ) | |
| official capacity as Matron/Office Manager of | ) | |
| Starke County Sheriff's Department, **STARKE** | ) | |
| **COUNTY SHERIFF'S DEPARTMENT**, by | ) | |
| and through its County Commissioners | ) | |
| as well as Sheriff Rosa. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Julie Mayhew, by counsel, and for her Complaint against Defendants, states as follows:

### Introduction

1.  The Plaintiff was wrongfully terminated from her employment with Starke County in retaliation for exercising her constitutional and statutory rights, for refusing to commit illegal acts, for complying with her duties under the law and for requesting pay rightfully owed to her statutorily.

2.  The Defendants are liable because they acted under color of state law to deprive Plaintiff of her constitutional rights, they acted in concert to retaliate against the Plaintiff, they slandered the Plaintiff, they failed to intervene to stop the unlawful retaliation and they committed other wrongful acts as set forth below.

3.  In short, Defendants sought to destroy Plaintiff because she took seriously the oath of her office and as a result she exposed thefts by public officials and employees of Starke County and she brought to light an insider's club of public servants who profited from their position while failing to provide honest service to the public.

### The Parties

4.  Plaintiff, Julie Mayhew, was an employee of Starke County, first appointed as a Special Investigator by the Starke County Prosecutor while working for the Starke County Prosecutor's office.

5.  Defendant, Starke County, is a political subdivision of the State of Indiana. It is governed by its Board of Commissioners and by the Starke County Council. Knox,

2

Indiana is the County seat for Starke County, Indiana. Knox, Indiana is located in the geographic region of the Northern District of Indiana.

6.    Defendants, Don Binkley ("Commissioner Binkley") and Mark Gourley ("Commissioner Gourley"), at all times material, are or were members of the Board of Commissioners of Starke County. They are sued in both their individual and official capacities.

7.    Defendant, Rachel Oesterreich ("Auditor Oesterreich"), at all times material, served as the elected Starke County Auditor. She is sued in her individual and official capacity.

8.    Defendant, William Dulin ("Sheriff Dulin"), was the elected Sheriff of Starke County before he was replaced by Defendant, Jack Rosa ("Sheriff Rosa"), who was elected Sheriff after Sheriff Dulin was term limited. Sheriff Rosa is the current Starke County Sheriff and has been since January, 2023. Both Sheriff Dulin and Sheriff Rosa are sued in their individual and official capacities.

9.    Defendants, Daniel Byrd ("Deputy Byrd"), Jack Hudgens ("Deputy Hudgens") and Chad McDonald ("Deputy McDonald"), were deputies in the Starke County Sheriff's Department. They are sued in their individual and official capacities.

10.    Defendant, Tony Black ("Councilman Black"), was a member of the Starke County Council at all times relevant herein. Councilman Black also played a major roll in the Campaign for Sheriff Rosa during 2022. Councilman Black is sued in his individual and official capacities.

11.    Defendant, David Pearman ("Councilman Pearman"), is the President of the Starke County Council. Councilman Pearman is sued in his individual and official capacities.

12. Defendant, Pamela McDonald ("Pam" or "former Matron McDonald"), was employed as Matron/Office Manager of the Starke County Sheriff's Department having been hired by Sheriff Dulin in 2018, and working at the Starke County Sheriff's Department until May of 2023. The Matron/Office Manager position is a position hired by the Starke County Sheriff. Defendant, Pamela McDonald, is sued in her individual and official capacity. Pamela McDonald was an active member of the Starke County Republican Party and was on the Board of the Starke County Chamber of Commerce.

13. Defendant, April Wilhelm ("Matron Wilhelm"), is the Matron/Office Manager of the Starke County Sheriff's Department and has been since mid-2023. Matron Wilhelm is also the elected Coroner of Starke County. Matron Wilhelm worked under Sheriff Rosa during the time Sheriff Rosa was the elected Coroner of Starke County. Matron Wilhelm is sued in her individual and official capacity.

14. The Defendants used Plaintiff to cover multiple positions under one grant-funded position. County Council and Commissioners, County Auditor, Sheriff Dulin, Sheriff Rosa and all other Defendants named were aware Plaintiff, during her time at the Starke County Sheriff's Department, had completed an audit and organization of over 30 years of evidence during the investigation into missing money and items from the Starke County Sheriff's Department evidence room. The Defendants were aware Plaintiff was cooperating with Indiana State Police detectives and the appointed Special Prosecutor with regard to the evidence room investigation and the related Grand Jury.

15. The Defendants assisted each other politically, helping each other to gain office, contract with Starke County, misuse public funds for their personal benefit, and

4

created their own special club for promoting their interests and retaliating against anyone who did not play ball with them.

## Jurisdiction and Venue

16.  This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.  This action also seeks recovery of damages for violation of the Fair Labor Standards Act.

17.  This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and § 1343.

18.  This action also seeks compensation for damages suffered as a result of torts recognized under Indiana's common law.

19.  This court has supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. §1367.

20.  Venue is proper under 28 U.S.C. § 1391(b).  The majority of Defendants reside in this district and the events and omissions giving rise to Plaintiff's claims occurred in this district.

## Plaintiff's Employment History with Starke County And Acts of Retaliation Against Plaintiff

21.  Plaintiff accepted the appointment as Special Investigator for the Starke County Prosecuting Attorney on February 23, 2021, by Starke County Prosecutor Leslie Baker, to assist Special Investigator Brett Coppins with an audit of evidence during the investigation into missing money and other items from the Starke County Sheriff's Office evidence room.

22.    On June 4, 2021, the Plaintiff was offered and accepted a full-time position with the Starke County Sheriff's Department.  The Plaintiff served in a dual role for the Sheriff's Department originally as "Victim's Advocate", "Evidence Room Manager" and "Special Investigator".  Sheriff Dulin and Pamela McDonald had the grant-funded position approved by the Commissioners and Council.  The grant funding was through HealthLinc.  Pamela McDonald worked with HealthLinc and Auditor Oesterreich to set the salary for Plaintiff's position, including Plaintiff's full benefit package.  Pamela McDonald completed the paperwork for the job description and title.  Plaintiff's job title was later changed by then Chief Deputy Jon Lendermon and Pamela McDonald only after Prosecutor Leslie Baker emailed Chief Deputy Lendermon upset about Plaintiff's job title as "Victim's Advocate" as the Prosecutor's office had an employee with the Victim's Advocate title.  Chief Deputy Jon Lendermon then changed Plaintiff's job title to "Social Service & Crisis Response Specialist".  In fact, in the first MOU for the position the job title "Victim's Advocate" was used.  Later, Plaintiff was also sworn in as "Property and Evidence Manager" while remaining a Special Investigator for the evidence room investigation.  Plaintiff was also eventually sworn in by Sheriff Dulin as Special Deputy as well.  Upon taking office, Sheriff Rosa swore in Plaintiff for the Property and Evidence Room Manager, Special Investigator, Social Service/Crisis Response and Special Deputy.  Each time Plaintiff was sworn in it was by the elected Clerk of the Starke Circuit Court.

23.    Plaintiff's role as "Social Service & Crisis Response Specialist" was fully funded by a federal grant through HealthLinc.  Councilman Pearman serves on the Board of Directors for HealthLinc.  At the beginning of the investigation and at times

during the investigation, the Plaintiff was working roughly 50-60 hours per week in her numerous roles for the Starke County Sheriff due to the nature of the evidence room investigation. HealthLinc was aware of Plaintiff's participation in the investigation into the evidence room as well as her role in the evidence room. The Plaintiff's "Special Investigator" credential was renewed on June 9, 2021, November 9, 2021, February 8, 2022 and January 6, 2023.

24.    During the course of the evidence room investigation, it came to the Plaintiff's attention that there were more than one suspect/perpetrator involved in theft of items from the Sheriff's evidence room. In September of 2021, a Special Prosecutor was appointed by Judge Kim Hall to investigate the case. In July of 2022, Plaintiff met with the Special Prosecutor and the Indiana State Police ("ISP") detective assigned to this case.  The Plaintiff was called to testify on more than one occasion before a Starke County Grand Jury in September of 2022. Subsequently, in September of 2022, Mr. Ferguson and Mr. Gray of the Starke County Sheriff's Department were indicted by a grand jury on charges of official misconduct and theft following the investigation into the missing evidence. Mr. Gray pled guilty to charges and was sentenced and Mr. Ferguson's case is awaiting trial now set for 2025.

25.    After the Plaintiff testified before the grand jury in September of 2022, in 2023, Plaintiff also cooperated with a State Board of Accounts ("SBOA") forensic audit and the federal investigation related to the funds under the control of the Starke County Sheriff's Department.

26.    During and following Plaintiff's cooperation with various investigations, Plaintiff experienced retaliatory behavior directed at her.  On December 2, 2022, and

December 12, 2022, for example, garbage was intentionally strewn around the Plaintiff's office by a Sheriff's Deputy. Garbage was also placed in Plaintiff's office on other dates. On January 13, 2023, Deputy Byrd placed his leg out in front of the Plaintiff while she was traveling down a flight of stairs, insinuating that he would trip her deliberately to watch her fall down the stairs. Deputy Byrd stated to the Plaintiff that "the urge is real to watch you go all the way," down, implying that he wished to trip her and watch her fall down the staircase. Additionally, on January 16, 2023, Deputy Byrd placed his middle finger on Plaintiff's nose and as Plaintiff walked away from the situation, Deputy Byrd pulled Plaintiff's hair.

27. Following Plaintiff's cooperation in the grand jury process, the Plaintiff noticed irregularities with the calculation of her overtime and compensatory time hours at the Sheriff's Department. The calculations were not compliant with the requirements in the Fair Labor Standards Act ("FLSA"). After the Plaintiff began testifying before the grand jury, Plaintiff suspiciously began receiving overtime payments. Prior to this point in her employment, Plaintiff did not get paid any overtime, despite frequently working over 40 hours per week. After emails and conversations discussing the Plaintiff's pay between Plaintiff and then Matron Pamela McDonald, Plaintiff realized that she should have been getting compensated for overtime in the amount of "time-and-a-half" pay from the Sheriff's Department for the entire time that she had been working for the Sheriff's Department or she should have been given compensatory time calculated at "time-and-a-half" under County Ordinances and Federal law. The Plaintiff ultimately received overtime payments in four pay periods in 2022. In the beginning of 2023, newly elected Sheriff Rosa instructed then Matron Pamela

McDonald to pay Plaintiff for overtime if overtime was worked. In 2023, Plaintiff was only paid overtime for four pay periods. In 2021, Plaintiff was not paid for approximately 83.25 hours of overtime; in 2022, Plaintiff was not paid for approximately 115.5 hours of overtime; in 2023, Plaintiff was not paid 55.25 hours of overtime. On June 19, 2023, at the Starke County Council meeting, to intimidate the Plaintiff, it was discussed that Plaintiff would have to pay Starke County back for the overtime payments she had received even though Pamela McDonald had billed HealthLinc for that portion of overtime and HealthLinc had paid those bills to Starke County and the funds were deposited into funds under the control of the Starke County Auditor.

28.    During the same time Plaintiff realized she was entitled to overtime, Plaintiff realized she should have been receiving pay for being on call during nights and weekends. Plaintiff was on-call for crisis response from June 4, 2021, until September, 2023, and received no on-call pay. Plaintiff was also called in on occasion to unlock the evidence room.

29.    At the same time as the investigation into the evidence room property was nearing completion, Sheriff Dulin was term-limited and replaced by Starke County Republican Sheriff Rosa. Sheriff Rosa took office in January of 2023. Upon taking office, Sheriff Rosa and Deputy Hudgens decided to request a forensic audit by the Indiana State Board of Account for the Sheriff's Department due to the fact money had been reported missing from the evidence room during the evidence room investigation. The Indiana SBOA sent Forensic Auditor, Mo Myers, and two other investigators to investigate any possible irregularities within the Sheriff's Department's finances.

9

30.    Sheriff Rosa also reappointed the Plaintiff as Special Investigator on January 5, 2023, and was aware of her continued cooperation and investigation with regard to the evidence room.  Sheriff Rosa also swore Plaintiff in as Special Deputy, Evidence Room Manager and Social Services/Crisis Response Specialist in January of 2023.

31.    In January of 2024, Chief Deputy Hudgens instructed Plaintiff to request documentation from HealthLinc regarding payments made by HealthLinc for the MIRT portion of the grant.  These payments were for pay to deputies who attended MIRT call-outs and for the payment of the MIRT coordinator position which, at that time, was held by Pamela McDonald.  When Pamela McDonald became aware of the emailed request made by Plaintiff to HealthLinc, Pamela McDonald threatened Plaintiff that there would be "repercussions" if Plaintiff or Chief Deputy Hudgens continued "going around her" seeking information regarding payments made from HealthLinc.  Pamela McDonald further intimated stating to Plaintiff that Auditor Oesterreich would "back her" with regard to the repercussions.  This occurred in Pamela McDonald's office at the Starke County Sheriff's Department.

32.    On or about April 19, 2023, after she had inquired about activity going on inside the Sheriff's Department, Pamela McDonald was told by Sheriff Rosa the State Board of Accounts was conducting a forensic audit.  On April 19, 2023, Pam sent an email to the Sheriff's Department, Sheriff Rosa, Plaintiff and Jen Rietow and she copied Auditor Oesterreich on the email.  The email stated the SBOA had stated no one except uniformed officers can receive compensation time for overtime.  Also on April 19, 2023, the HealthLinc grant-related contact

information for Plaintiff's grant information was sent to the Auditor's Office by then Matron Pamela McDonald as well as Plaintiff's timesheets. Prior to this, the Auditor's Office had no contact with HealthLinc regarding Plaintiff's grant. Also on this date, Deputy Hudgens told Plaintiff he was informed by Pamela McDonald that Plaintiff needed to use up her compensation time.

33. Plaintiff was directed by Deputy Hudgens and later by Sheriff Rosa to cooperate with the SBOA during their forensic audit. Prior to one meeting Plaintiff was told to attend with the SBOA, Deputy Hudgens directed the Plaintiff regarding what he felt should be reported as financial discrepancies as well as inappropriate towing contracts. Plaintiff was told she had to meet with the SBOA on May 4, 2023. During that meeting, Plaintiff discovered false allegations were being made her. The false allegations included that Plaintiff somehow was responsible for her own grant funding and the misuse of her grant funding. Also during this meeting, Plaintiff was asked questions and gave statements to SBOA forensic auditors with regard to her grant-funded position as well as questions asked about her knowledge of any misuse of funds. Plaintiff later cooperated with ISP and the Federal Bureau of Investigation ("FBI") agents regarding misuse of funds. Plaintiff provided statements regarding paperwork shown to her by Deputy Hudgens regarding the actions of Pamela McDonald involving irregularities with the Sheriff's Commissary Fund and the Amazon account used by the Sheriff's Department which was separate from the Starke County Amazon account.

34. During the SBOA forensic audit, it was discovered Pamela McDonald had been using funds from the Sheriff's Commissary Fund for improper purposes including transferring funds from Commissary to her personal PayPal account and it was

also discovered Pamela McDonald had used the Starke County Sheriff's Department Amazon account to order non-work related items which were shipped directly to her home address. The SBOA released a report on the audit/special investigation in July of 2024.

35.    On May 4, 2023, after SBOA met with Plaintiff at 8:30 a.m. and met with Pam McDonald directly after, Pam was placed on administrative leave and was subsequently fired on May 8, 2023.

36.    After Pamela McDonald was terminated and knowing the reason for the termination, Councilman Pearman called the sheriff's department and asked "do we have to fire her?" Councilman Pearman was willing to overlook the findings of the misuse of funds.

37.    After giving testimony to SBOA forensic auditors related to Pam's activities, the Plaintiff began experiencing additional harassment at the workplace.

38.    On May 9, 2023, despite knowing Plaintiff was sworn in and under oath as Special Investigator, Deputy Hudgens told Plaintiff she was no longer allowed to work on with the ISP or the Special Prosecutor with regard to the evidence room investigation and pending cases while on the clock. Deputy Hudgens told Plaintiff to refer all requests from ISP to him. The Plaintiff had meetings already scheduled with ISP and reported this conversation to ISP investigators on May 10, 2023. An ISP Detective then met with Deputy Hudgens regarding this sudden change as Plaintiff had been working on the evidence room case since 2021 and with the permission of former sheriff, Sheriff Dulin, and Sheriff Sheriff Rosa. Deputy Hudgens allowed Plaintiff to meet with ISP on May 10, 2023; however, he instructed Plaintiff to clock out. On and after this date, the Plaintiff was not paid

for meetings she was called to with ISP detectives or FBI agents. Deputy Hudgens continued to allow Plaintiff to do the Evidence Room Manager job.

39.     The Plaintiff was also retaliated against in violation of the Fair Labor Standards Act ("FLSA"). At the time in question, FLSA required that overtime payments are made to salaried employees who make less than $47,500 per year and work more than 40 hours per week. Due to her work as Crisis Response Specialist, Evidence Room Manager and Special Investigator, Plaintiff was frequently working over 40 hours per week. Compensatory time was logged in the timeclock system by Pamela McDonald for all sheriff's department employees; however, Plaintiff was later denied compensatory time. Compensatory time logged into the timeclock system was not always calculated per statute and at times was logged only at straight time instead of time and a half. The Plaintiff was entitled to compensatory time under the FLSA, but was improperly denied payment of overtime due and owing to her. During this time, an Ordinance was in place in Starke County allowing overtime for Sheriff's Department employees. Both Sheriff Dulin and Sheriff Rosa were aware Plaintiff was working overtime at times due to the need to complete the audit, the investigation and due to Plaintiff being called out after hours and on weekends for the crisis response portion of her position. Plaintiff was the only employee denied the overtime and compensation time.

40.     On May 8, 2023, the same day that Pamela McDonald was fired from the Sheriff's Office, Chief Deputy Hudgens requested Plaintiff come to his office to meet with Starke County Auditor Oesterreich. The Plaintiff was told by Auditor Oesterreich that she needed to "use up" her remaining compensation time. Auditor

Oesterreich also asked Plaintiff whether she had spoken to the SBOA investigators regarding the compensation time issues in the Sheriff's Office. This was after an April 19, 2023, email from Pam to the entire Sheriff's Office announcing (incorrectly) the following: "I have been reminded by the SBOA that no one except for uniformed officers can receive comp time. Uniformed officers are considered anyone who works in the jail as a jailer and officers." Plaintiff, in her next meeting with the SBOA, asked the investigators if they instructed Pam or the County to send such an email and Plaintiff was told they had not, in fact, told Pam, Auditor Oesterreich or anyone at Starke County that Plaintiff was not entitled to receive compensation time for overtime hours worked. No other Starke County employee was called to a meeting with Auditor Oesterreich regarding compensation time. No other employee was told to "use up" their compensation time. Plaintiff was singled out and harassed by Auditor Oesterreich due to her statements and cooperation with the SBOA, ISP and FBI. Chief Deputy Hudgens was present for this meeting. On May 25, 2023, Auditor Oesterreich emailed Plaintiff stating something needed to be done about Plaintiff's compensation time hours.

41. Two weeks after the April 19th email and one week prior to the meeting regarding Plaintiff's compensation time, on May 1, 2023, Auditor Oesterreich told the Starke County Board of Commissioners a new Employee Handbook was needed. On May 16, 2023, the new Employee Handbook was in place. The new Employee Handbook changed Plaintiff's position to 35 hours per week, rather than 40; however, no other grant-funded position or county-funded position at the Sheriff's Department changed to 35 hours per week. This was yet another form of harassment directed only at the Plaintiff and an attempt to get around the Federal

Law and the Fair Labor Standards Act.  On October 16, 2023, just a few weeks after Plaintiff was terminated by Commissioner Binkley and Auditor Oesterreich, both Commissioner Binkley and Auditor Oesterreich spoke at the Starke County Board of Commissioner's meeting asking for all Sheriff's Department employees to have paid lunch hours again (40 hours a week) and this was granted.

42.    On June 9, 2023, after Plaintiff met with ISP and Special Prosecutor on the evidence room cases, Deputy Hudgens told Plaintiff "Don't have your friends there again.  Have your meetings elsewhere.  I don't even want to look at them." and Deputy Hudgens began asking Plaintiff who was paying her to meet with them and asked if ISP was paying her.  Again, Plaintiff was simply doing what she was sworn in to do, not getting paid for her sworn duties and being harassed for doing so.

43.    On June 9, 2023, during a phone call with Auditor Oesterreich, Plaintiff was going over issues with fund ledgers and balances, payroll and discussed FSLA.  Auditor Oesterreich became angry with Plaintiff directed Plaintiff to appear at the June 19, 2023, Starke County Council meeting to address her claim for unpaid overtime.  On June 29, 2023, just prior to this meeting, Sheriff Rosa met with Plaintiff outside of the Annex Building and Sheriff Rosa told Plaintiff she was only asking for the overtime owed for 2023, and instructed Plaintiff if overtime payment was denied to wait until November to revisit the issue. Sheriff Rosa told Plaintiff to let him do the talking.  Plaintiff attended the meeting on June 19, 2023, where she was undermined by Auditor Oesterreich and Councilman Black.  Auditor Oesterreich lied to the County Council regarding Plaintiff's work as an investigator with respect to the evidence room.  Auditor Oesterreich then told

Plaintiff she could not work the hours needed to do her job for Crisis Response, which required work outside of normal office hours. This forced Plaintiff to work without compensation as Plaintiff was not going to break the terms of the federal grant MOU. In this meeting, Sheriff Rosa stated he inherited this problem from the former administration as they had tasked Plaintiff with additional jobs. Sheriff Rosa, by omission, lied to the council as in January of 2023, he had the Plaintiff sworn in for the same additional positions. The plaintiff was told this would be addressed at the next Starke County Council meeting. On July 17, 2023, the morning of the next council meeting, Sheriff Rosa told Plaintiff he met with Auditor Oesterreich and Councilman Black and they decided it was best to take Plaintiff off of the County Council's agenda. Auditor Oesterreich sent an email to all County Council members stating she had tried to contact Plaintiff to see if HealthLinc would attend the County Council meeting and stated Plaintiff had not responded to her. This was false as she did not attempt to contact the Plaintiff. In fact, Auditor Oesterreich had been in contact with HealthLinc herself and did not invite HealthLinc to attend the County Council meeting.

44. On or about July 19, 2023, Sheriff Rosa went to lunch with Plaintiff. It was Plaintiff's understanding the lunch was to discuss the harassment Plaintiff was receiving regarding her payroll. During lunch, Sheriff Rosa discussed his longtime friendship with Councilman Black, and rumors regarding the towing business that Councilman Black had started receiving from Starke County. Sheriff Rosa acknowledged he was aware Plaintiff was speaking to ISP, SBOA, and FBI investigators regarding the evidence room, the SBOA special investigation and the corruption in general in Starke County. Sheriff Rosa told Plaintiff he "can't have

16

everyone going down in the County". The Plaintiff felt this was yet another threat against her in retaliation for her working with police authorities regarding thefts of funds and property from Starke County by Starke County employees and elected officials.

45. On July 26, 2023, Plaintiff met with Sheriff Rosa and Matron Wilhelm in the Sheriff's Department receptionist area regarding the constant harassment regarding Plaintiff's payroll from Auditor Oesterreich and Councilman Pearman since the day Pam was terminated. At this meeting, MIRT Coordinator payment was discussed as well as the fact that a $250.00 payment under the MIRT grant should have been paid to Plaintiff instead of Pamela McDonald. Councilman Pearman was texting Matron Wilhelm during this meeting and stated Plaintiff was not going to get paid the money owed to her for MIRT coordination under the grant. Both Auditor Oesterreich and Councilman Pearman were given documentation showing the payment to Pam and showing Pam had overbilled HealthLinc by $250 and HealthLinc had paid the extra $250 which was sitting in the MIRT fund at that time. During this meeting Sheriff Rosa offered to pay Plaintiff the $250 owed to Plaintiff. Plaintiff felt this was an attempt to keep her quiet so the issue regarding Pamela McDonald's final check, the fund ledger and billing to the grant holder would not be discussed further by Plaintiff. Prior to this meeting, Matron Wilhelm had taken documentation to Auditor Oesterreich showing the $250 payment owed to Plaintiff was paid to Pam on Pam's final paycheck. Councilman Pearman was aware of this as well, yet he refused Plaintiff the $250 payment owed to her for MIRT Coordination. Auditor Oesterreich paid the $250 to Pamela McDonald on her final paycheck and then Auditor Oesterreich

and Councilman Pearman both refused to correct this misuse of funds and refused to answer as to the extra $250 billed to HealthLinc which was sitting in the MIRT fund held by the auditor's office. To date, Plaintiff has not been paid this money.

46. On July 7, 2023, Plaintiff received an email from HealthLinc regarding a meeting scheduled for July 13, 2023, to discuss the renewal of the grant and updating the MOU for the police social work/crisis response position and the police officer funded position. Plaintiff had a conversation with Steven Butera of HealthLinc and discussed how the new MOU could be improved to lay out specific tasks and work to be performed under the grant positions, as well as thoughts Plaintiff had on how to improve the program for the department.

47. On July 12, 2023, directly outside of her office, the Plaintiff heard Councilman Black state there would be "an eye for an eye for these people on this investigation." This was meant as a threat directly against the Plaintiff in retaliation for her role in cooperating with State and Federal authorities related to the Sheriff's Department finances. That day, the Plaintiff told Deputy Hudgens that she believed she was singled out for being involved with the ongoing evidence investigation, and she felt she was being blamed for Pamela McDonald's getting fired.

48. On July 12, 2023, Plaintiff learned in a phone call with Steven Butera from HealthLinc that the July 13, 2023, meeting was canceled. Plaintiff was told by Butera that Auditor Oesterreich and Councilman Pearman had been speaking with his CEO and after a conversation was had, he felt Plaintiff should probably start looking for another job. Mr. Butera was aware of the issues with the SBOA audit and investigation and the issues regarding Plaintiff's overtime. After the

call, Plaintiff spoke to Deputy Hudgens who informed her that Councilman Pearman and Auditor Oesterreich had been speaking with HealthLinc about Plaintiff's position. Deputy Hudgens had Plaintiff meet with Sheriff Rosa to explain. Plaintiff again expressed her concerned to Sheriff Rosa that she was being singled out and harassed due to Pamela McDonald's firing.

49.     On July 28, 2023, the Plaintiff was called to a meeting with former Heathlinc employee Steven Butera, HealthLinc CEO Beth Wrobel, Sheriff Rosa, and Auditor Oesterreich and Matron Wilhelm. All parties discussed that the grant funding Plaintiff's position as a Crisis Response Specialist was going to be changed to require an individual with a Master's Degree of Education or better to serve in the Social Service & Crisis Response Specialist position. As such, Plaintiff's employment would be terminated at the end of her grant terms in September, and Plaintiff would no longer be allowed to work in the Crisis Response position after September 29, 2023, as it was funded by the grant. Plaintiff has been working in the position successfully since 2021, without a Master's Degree, with HealthLinc's knowledge and consent. This was orchestrated by Auditor Oesterreich and Councilman Pearman as a pretext for punishing Plaintiff for her cooperation in various investigations implicating employees and elected officials of Starke County. Councilman Pearman serves on the Board of Directors for HealthLinc, and is a friend of the HealthLinc CEO, Beth Wrobel. Councilman Pearman also conspired with Auditor Oesterreich and Pamela McDonald to punish Plaintiff, eventually leading to Plaintiff's termination from the grant position. During the meeting, Beth Wrobel stated that Councilman Pearman was "her boss" and that he had spoken to her about the grant-funded Social Work position. CEO Wrobel

also stated she had several conversations and text messages with Auditor Oesterreich regarding Plaintiff's position as well. This clearly was Councilman Pearman and Auditor Oesterreich working with CEO Wrobel to remove Plaintiff from the position as one-week prior Plaintiff had discussed the grant being renewed and new MOU's and the plans for the new contract year. Plaintiff had informed CEO Wrobel during the July 28th meeting that grant funds were being misused. The SBOA forensic audit was discussed with HealthLinc on more than one occasion as Plaintiff had requested information regarding payments made to the sheriff's department for MIRT, the police officer position and Plaintiff's position after Pam was terminated and Auditor Oesterreich informed Sheriff Rosa the grant funds were in the negative. Plaintiff was looking into the billing and payments as well as fund ledgers provided to her by Auditor Oesterreich in order to correct any funding issues created by inaccurate billing.

50. On August 24, 2023, Deputy McDonald, Pamela McDonald's husband, went to Plaintiff's office and was angry and stated "whenever you have your press release ready, my lawyer wants it." Deputy McDonald explained he saw the Sheriff's Department was going to do a press release regarding the 2022 SBOA audit report. Plaintiff informed Deputy McDonald to talk to Sheriff Rosa as she was not involved in making press releases. At that time, Deputy McDonald told Plaintiff that Auditor Oesterreich told he and Pamela McDonald that Plaintiff was the one who reported Pamela to the SBOA.

51. On September 8, 2023, FBI investigators and ISP detectives came to the Sheriff's Department to meet with Plaintiff. Directly after the meeting concluded, Sheriff

Rosa told Plaintiff that she was required to meet with him, Auditor Oesterreich and Commissioner Binkley on September 12, 2023.

52.   Prior to meeting with Plaintiff on September 12, 2023, Sheriff Rosa, Auditor Oesterreich and Commissioner Binkley had met to conspire on terminating Plaintiff's employment in retaliation for her work in exposing crimes committed by their friends and associates, and for her asserting her rights to be paid overtime.

53.   On September 12, 2023, the Plaintiff was called to a meeting with Sheriff Rosa, Auditor Oesterreich and Commissioner Binkley. At the meeting, Auditor Oesterreich and Commissioner Binkley, not Sheriff Rosa, told Plaintiff that her services were "no longer needed" and that her employment would be terminated on September 15, 2023.  The Plaintiff also was told at the meeting that she was not going to be paid outstanding compensation time or overtime wages owed to her. At the meeting, Auditor Oesterreich stated to the Plaintiff that no compensatory time was offered to any Sheriff's Office employees, despite prior statements to the contrary by her. The Plaintiff explained to all present at her termination meeting that she was being unlawfully fired for participating in the ongoing state and federal investigations. Even though Starke County was going to be getting paid by the HealthLinc grant for Plaintiff's last two weeks of employment, Commissioner Binkley and Auditor Oesterreich attempted to force Plaintiff to vacate her position two weeks early using that time as her vacation time.  Starke County Handbook does not require employees to use vacation time prior to separation from the county.   In fact, Starke County was receiving around $20,000 over the salaries of the Plaintiff's position and the police officer position.

21

Pam and Auditor Oesterreich decided upon the numbers for Plaintiff's salary and benefit package and what would be billed to HealthLinc. These numbers were accepted by HealthLinc. Subsequent to her termination, the Plaintiff was not timely offered health insurance as required under the Consolidated Omnibus Budget Reconciliation Act ("COBRA").

54. After the Plaintiff was fired, Councilman Pearman discussed the requirements of Plaintiff's grant funded position in a public meeting and his statements suggested the position did not require the master's degree, again showing this was done only to force Plaintiff out of her role. On October 9, 2023, after the Plaintiff was fired, Auditor Oesterreich and Sheriff Rosa testified before the Starke County Council that the Employee Handbook previously changed on May 16, 2023, should be changed back to give 40 hours to all employees that were previously affected. Commissioner Binkley also spoke of this in the public meeting. Furthermore, the requirement to have a Master's Degree to serve in the position funded by the HealthLinc grant was also removed from the open job posting position on the Starke County website, despite officials telling the Plaintiff that a Master's Degree was required for the role.

55. On October 16, 2023, Auditor Oesterreich asked for approval from the Starke County Council to pay $1,400.95 for accrued vacation time to Plaintiff. Councilman Pearman told the County Council this should be approved and that Plaintiff was "asking for a lot more". Councilman Pearman's statement was a lie. The $1,400 was approved; however, Plaintiff did not receive any checks from Starke County after the October 16th date, despite the approval.

56.    Plaintiff requested all vacation time owed to her be paid to her at the end of her employment with the Sheriff's Department.  Plaintiff was told she was not going to get any vacation time which was rolled over from previous years.  It was common knowledge former Sheriff Dulin had approved rolled over vacation time due to covid and being short-staffed.  Just after Plaintiff's termination and being denied to be paid for her rolled-over unused vacation time, Matron Wilhelm and Auditor Oesterreich paid other employees who left the department for vacation time which was rolled over from previous years.  This was yet again another retaliatory act against the Plaintiff wherein Plaintiff was singled out by Matron Wilhelm and Auditor Oesterreich.

57.    In November of 2023, Matron Wilhelm spoke to the Starke County Board of Commissioners and Starke County Council about getting a new time clock system.  Matron Wilhelm made a statement that Auditor Oesterreich helped her "clear out" and erase the information on the time clock system stating it was incorrect and insinuating the time clock system did not work correctly.  This was another action taken by two elected officials and a sworn employee to erase evidence of the compensation hours owed to Plaintiff.  In fact, the new time clock system was not put into action until late 2024.

58.    In September of 2023, Sheriff Rosa asked the Starke County Board of Commissioners to approve a position for Evidence Tech.  Sheriff Rosa told Plaintiff he was doing this in order to keep her on board as Evidence Room Manager.  During this meeting it was asked if this new position was for the Plaintiff.  Sheriff Rosa was denied this position and told there was a hiring freeze, yet six months later the Board of Commissioners approved an evidence tech

position for Sheriff Rosa, hiring someone who did not have the qualifications Plaintiff had for said position.   During this "hiring freeze" other new positions in the county were approved as well.

59. Plaintiff informed Sheriff Rosa several times of the constant harassment she was receiving after Pamela McDonald was terminated, yet Sheriff Rosa did nothing to stop the actions being taken towards Plaintiff.

60. Sheriff Rosa did nothing to stop Auditor Oesterreich and Commissioner Binkley from firing Plaintiff.

61. The retaliation and harassment by Starke County employees and elected officials against the Plaintiff that resulted in her ultimate wrongful termination of employment violated the public policy exception to at-will employment.

62. Starke County employees and elected officials directly and systematically targeted the Plaintiff for cooperating with State and Federal investigations related to theft of drugs, firearms, and money from the Starke County evidence room, as well as investigations into embezzlement and misuse of funds within the Starke County Sheriff's Department.

63. Starke County employees and elected officials created a hostile work environment, voiced threats against the Plaintiff, changed employee policies to negatively affect only the Plaintiff, and unlawfully deprived the Plaintiff of wages, required compensatory time and overtime pay, on-call pay, vacation pay, and health benefits.

64. Starke County officials failed to properly investigate and respond to the retaliatory actions reported by the Plaintiff. In fact, it was the official practice of the Defendants, including the Starke County Board of Commissioners and the Starke

County Council, to retaliate against the Plaintiff. Furthermore, the Defendants all failed to intervene to stop unlawful action occurring before their eyes.

65. The numerous individual incidents and actions by elected officials and employees of Starke County have caused Plaintiff to suffer damages.

## COUNT I – RETALIATORY DISCHARGE

66. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

67. Indiana recognizes an exception to the employment at will doctrine. Specifically, employees who exercise statutory rights, obey a legal duty, or refuse to engage in criminal acts, are protected from retaliation in their employment.

68. Plaintiff complied with her legal duty to testify before a grand jury in the evidence room case. Plaintiff had a duty to cooperate with SBOA investigators and she did just that. She had a statutory right to seek compensation for her overtime. She had a constitutional right to speak at public meetings. Plaintiff refused to look the other way when she found evidence of theft from the evidence room, misuse of funds at the Sheriff's department and negative fund ledger balance in the county. She went forward and testified before the grand jury in the evidence room investigation. She did the job she was sworn to do and went above and beyond to look out for the county, the citizens of the county and the funds held by the county. She cooperated with the FBI, ISP and SBOA.

69. The Defendants were aware of Plaintiff's protected activity.

70. The Defendants retaliated against the Plaintiff as a result of her engaging in protected activity in violation of Indiana public policy.

71.  Plaintiff timely served a tort claim notice on the defendants as required by Indiana's Tort Claim Act.

72.  More than ninety (90) days have expired since the Tort Claim Notice was served.

73.  Starke County is liable for the actions of its employees and officials as a result of their unlawful conduct in retaliating against the Plaintiff.

## COUNT II – DEFAMATION

74.  Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

75.  On June 19, 2023, during the Starke County Council meeting, Auditor Oesterreich stated Plaintiff should not have been working dual positions.  Auditor Oesterreich was aware Plaintiff had been working dual positions and knew it was approved through HealthLinc.  Auditor Oesterreich stated in this meeting that she was unaware of any compensation time at the sheriff's office.  Auditor Oesterreich was aware of compensation time as she had met with Plaintiff on May 9, 2023, and told Plaintiff to "use up" her compensation time.  Auditor Oesterreich also received emails regarding compensation time and received employee service records showing compensation time.

76.  Auditor Oesterreich knowingly gave false answers with the intent to slander the Plaintiff.

77.  On October 16, 2023, at a Starke County Council meeting, Auditor Oesterreich asked for approval of $1,400.95 for accrued vacation for a position previously held by Plaintiff.

78.  One of the Starke County Council members asked, "Once again she was in charge of her grant?" and Auditor Oesterreich lied and said "yes and it ended."  The

26

Council member then asked, "she ended it with fund being short?" and Auditor Oesterreich said "yes".

79.  On October 16, 2023, at a Starke County Council meeting, Councilman Pearman made the statement the Council should approve the accrued vacation time request and stated "she was asking for a lot more".  Councilman Pearman insinuated Plaintiff was demanding more than what she was entitled to by law.  In fact, Councilman Pearman and Auditor Oesterreich knew Plaintiff was only seeking what she was entitled to under FSLA and the county handbook and ordinances.

80.  Councilman Pearman was aware his statements were false when he made them.

81.  Councilman Pearman knowingly gave false answers with the intent to slander the Plaintiff.

82.  Auditor Oesterreich knew that her answers were false when she gave the answers.

83.  Auditor Oesterreich knowingly gave false answers with the intent to slander the Plaintiff.

84.  Councilman Black was aware of the situation surrounding Plaintiff's wrongful termination, yet in the October 16th meeting he said nothing to correct the false statements.

85.  The fact is that Auditor Oesterreich and Pamela McDonald were in charge of grant, and they ran it short, but they wanted the Starke County Council and members of the public to believe that Plaintiff misappropriated money when she did not.

86.  The Plaintiff suffered damage to her reputation as a result of the defamatory statements made about her by Auditor Oesterreich.

87.   Plaintiff timely served a Tort Claim Notice on the Defendants as required by Indiana's Tort Claim Act.

88.   More than 90 days have expired since the Tort Claim Notice was served.

89.   Starke County is liable for the actions of its employees and officials as a result of their unlawful conduct in defaming the Plaintiff.

90.   Alternatively, the actions of Auditor Oesterreich and Councilman Pearman were outside the scope of their employment and/or official capacity, done intentionally, and they are personally liable for their conduct in defaming the Plaintiff.


**COUNT III- FIRST AMENDMENT VIOLATIONS**

91.   On June 19, 2023, Plaintiff appeared at a Starke County Council meeting and spoke publicly, not just about her own overtime issue, but the fact that a large number of Starke County employees were being improperly paid and denied overtime compensation due under the Fair Labor Standards Act.

92.   The failure to properly pay employees through unlawful violations of federal and state law was a matter of public concern because of the overreaching impact on a large number of county employees.

93.   The First Amendment to the United States Constitution guarantees Plaintiff's right to speak out on matters of public concern without fear of unjust retaliation.

94.   As described more fully above, Plaintiff engaged in extensive protected speech on matters of public concern by reporting on the criminal misconduct and corruption of others in Starke County offices and positions.

95. As described more fully above, Plaintiff engaged in extensive protected speech on matters of public concern when she testified before the Grand Jury, cooperated with the ISP, SBOA and appeared before the Starke County Council.

96. As a result of Plaintiff's exercise of protected speech, Defendants retaliated against Plaintiff in the manner described in the preceding paragraphs.

97. Retaliation against Plaintiff was devised, approved, and carried out by individuals with final policymaking authority with respect to the actions taken, including Sheriff Rosa, Auditor Oesterreich Commissioner Binkley, Councilman Black and Councilman Pearman.

98. The misconduct described above in this Count was the result of Defendant County's deliberate indifference to the policies and widespread practices described more fully above and below, in that:

99. Municipal policymakers are aware of, condone, and facilitate by their inaction a "code of silence" in Starke County by which Starke County officials and employees understand that they should cover for each other unconditionally and that failure to do so amounts to a betrayal.

100. Municipal policymakers are aware of, condone, and facilitate by their inaction, the enforcement of the "code of silence" within the Sheriff's Department through retaliation against investigators or employees who do report the misconduct of other officers.

101. Defendant Starke County has recognized the existence of a "code of silence" within the Starke County Sheriff's Department and within the County government, but has failed to take the necessary steps to protect officers and employees who break the "code of silence" and suffer retaliation as a result.

102. As a matter of both policy and practice, Defendant County and Defendant Sheriff directly encouraged, and was thereby the moving force behind the very type of misconduct at issue here by failing to adequately supervise, discipline, and control its officers, such that its failure to do so manifests deliberate indifference.

103. As a matter of both policy and practice, Defendant Starke County and Sheriff Rosa facilitated the very type of misconduct at issue here by allowing it to continue as a matter of practice within the department, thereby leading officers to believe that the "code of silence" will be enforced throughout the department, and in that way, directly encouraging future abuses.

104. As a widespread practice so prevalent as to compromise municipal policy, officers of the Sheriff's Department, officers and investigators who have dared to speak out about the misconduct of others have experienced retaliation in a manner similar to that alleged by Plaintiff.

105. These widespread practices, so well-settled as to constitute de facto policy in the Starke County Sheriff's Department, were able to exist and thrive because municipal policymakers with authority over the Sheriff's Department exhibited deliberate indifference to these problems, thereby effectively ratifying them.

106. The widespread practices described in the preceding paragraphs were allowed to flourish because the municipal Defendants declined to implement sufficient training and/or enforce legitimate oversight and punishment.

107. As a result of the aforementioned deprivation of federal rights, Plaintiff has suffered and is likely to suffer injuries including but not limited to lost wages, emotional distress, and physical distress.

## COUNT IV – FAILURE TO INTERVENE

108. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

109. In the manner described above, during the constitutional violations described above, one or more of the Defendants stood by without intervening to prevent the misconduct, despite having a reasonable opportunity to do so.

110. Because of the Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress.

111. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's rights.

112. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Starke County Sheriff's Department in the manner described more fully in the preceding paragraphs and was tacitly ratified by policymakers for the Municipal Defendants with final policymaking authority.

## COUNT V – CONSPIRACY TO DEPRIVE RIGHTS

113. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

114. After Plaintiff refused to commit misconduct, and insisted on complying with her duties and honoring her Oaths, and asserted her rights, Defendants reached an agreement amongst themselves to retaliate against Plaintiff thereby depriving her of her constitutional rights, all as described in the various paragraphs of this Complaint.

115. In this manner, the Defendants, acting in concert with each other, and with other unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

116. In furtherance of the conspiracy, each of the co-conspirators committed overt acts as described in this Complaint and was an otherwise willful participant in joint activity.

117. As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and she suffered financial damages, as well as severe emotional distress and anguish, as is more fully alleged above.

118. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

119. The misconduct described in this Count was undertaken pursuant to the policy and practice of Starke County, Councilman Pearman, Commissioner Binkley, Councilman Black, Auditor Oesterreich and Sheriff Rosa, in the manner described more fully in the preceding paragraphs, and was tacitly ratified by policymakers for the municipal defendants with final policymaking authority.

## COUNT VI – LIABILITY OF MUNICIPALITY

120. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

121. The actions of the Auditor Oesterreich, Sheriff Rosa, Sheriff's Deputies, Pamela McDonald, Matron Wilhelm and Starke County Council Members and Starke County Board of Commissioners, in committing misconduct and violating Plaintiff's constitutional rights were undertaken pursuant to the policies and

32

practices of the Starke County described above, which were created, maintained, or ratified by policymakers for Starke County with final policymaking authority.

122.    The policies and practices described in this Count were maintained and implemented by Starke County with deliberate indifference to Plaintiff's constitutional rights.

123.    As a direct and proximate result of Starke County's actions, Plaintiff's constitutional rights were violated and she suffered injuries and damages, as set forth in this Complaint.

124.    Starke County is therefore liable for the misconduct committed by its employees, officials and officers.

## COUNT VII – FLSA/PAY VIOLATIONS

125.    Plaintiff incorporates all preceding paragraphs of this complaint as fully restated herein.

126.    Pursuant to 29 USC § 207 Plaintiff was entitled to be paid, and Starke County was required to pay Plaintiff at one and one half (1 ½) times her regular rate of pay for every hour beyond 40 hours that Plaintiff worked during each work week and Plaintiff was entitled to be paid for on-call time.

127.    Pursuant to 29 USC § 216(b), Plaintiff is entitled to recover liquidated damages and her reasonable attorneys' fees.

128.    Starke County's regular and recurring underpayment of Plaintiff was willful such that, pursuant to 29 USC § 255(a), she is entitled to recover all of her unpaid overtime for the past three years.

129.    Starke County's failure to pay Plaintiff for the overtime hours worked by her constitutes a violation of I.C. § 22-2-5-2.

130.    Starke County failed to pay Plaintiff the correct amount on payroll.  In 2023, it was discovered that the payroll spreadsheet did not accurately calculate payroll. Matron Wilhelm was aware of this.  Plaintiff corrected the numbers and made the Auditor aware of the issue; however, the payroll sheet was sent back to the sheriff's office with the corrections marked out and the wrong calculations were used.  This happened for an unknown timeframe as Plaintiff is unaware when it began.

131.    Plaintiff is entitled to recover the amount of her unpaid overtime wages, plus liquidated damages equal to two times the amount of his unpaid overtime wages, plus her reasonable attorneys' fees.

## COUNT VIII – ILLEGAL WIRETAPPING

132.    Starke County had been recording all employee discussions on a County-wide basis, without consent of the participants, without court order, without notice in advance to employees.

133.    This practice was discovered in 2023.

134.    Defendants unlawfully recorded employee conversations in violation of the Federal Wiretapping Act, 18 U.S.C.A. §§ 2510 et seq., entitling Plaintiff to actual, statutory, and punitive damages.

WHEREFORE, Plaintiff, by counsel, requests judgment against the Defendants in an amount adequate to compensate her for the damages, for punitive damages, for costs and attorney fees, for reinstatement, and for all other and for all other just and proper relief.


Respectfully submitted,


 s/   Peter J. Agostino
Peter J. Agostino     (#10765-71)
ANDERSON, AGOSTINO & KELLER
131 South Taylor Street
South Bend, Indiana 46601
Telephone: (574) 288-1510
Facsimile: (574) 288-1650
Email: agostino@aaklaw.com

## JURY DEMAND

Plaintiff, by counsel, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

 s/   Peter J. Agostino
Peter J. Agostino    (#10765-71)
ANDERSON, AGOSTINO & KELLER
131 S. Taylor Street
South Bend, IN  46601
Telephone: (574) 288-1510
Facsimile: (574) 288-1650
Email: agostino@aaklaw.com