UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JULIE MAYHEW,

    Plaintiff,

    v.

STARKE COUNTY, et al.,

    Defendants.

Case No. 3:25-CV-46-CCB-SJF

## <u>OPINION AND ORDER</u>

Plaintiff Julie Mayhew has filed a complaint against a number of private and public defendants, in which she alleges that Defendants Pamela and Chad McDonald[1] acted individually and in conspiracy to violate her free speech rights under the First Amendment. The McDonalds have moved to dismiss Plaintiff's claims against them under Rule 12(b)(6).

### BACKGROUND

The following facts are alleged in Plaintiff's Complaint and are accepted as true for purposes of deciding the pending motion to dismiss. *See Doss v. Clearwater Title Co., 551 F.3d 634, 639 (7th Cir. 2008).* In February 2021, Plaintiff was appointed by the Starke County Prosecutor to a part-time role as a Special Investigator to look into missing money and items from the Starke County Sheriff's Department ("Department") evidence room. (ECF 1 ¶ 21). In June 2021 she accepted a full-time position at the

---

[1] It is undisputed that Chad and Pamela McDonald are married. (ECF 34 at 1; 38 at 1).

Department. (*Id.* ¶ 22). Her position had several overlapping and nonexclusive titles during her time there, including "Victim's Advocate," "Property and Evidence Manager," and "Special Investigator." (*Id.*). Her salary was funded by a federal grant provided through a third party ("Healthlinc") and approved by the Stark County Council and Board of Commissioners ("Board"). (*Id.* ¶ 22–23).

In September 2022, Plaintiff testified several times before a Starke County grand jury regarding the theft of items from the Department evidence room. (*Id.* ¶ 24). The grand jury indicted two employees of the Department on charges of official misconduct and theft. (*Id.* ¶ 24). One later pleaded guilty, while the other was awaiting trial as of Plaintiff's filing. (*Id.*).

In April 2023, Starke County Sheriff Jack Rosa initiated a forensic audit of Department finances in conjunction with the State Board of Accounts ("SBOA"). (*Id.* ¶ 32). Plaintiff cooperated with the SBOA during this audit, as well as with other investigations by the Indiana State Police and Federal Bureau of Investigation. (*Id.* ¶¶ 29, 33). In the following months, Sheriff Rosa instructed Plaintiff to request documentation on grant payments that were related to Department employee Pamela McDonald. (*Id.* ¶ 31).

During the audit, it was discovered that Pamela McDonald had been using Department funds for improper personal payments and purchases. (*Id.* ¶ 34). At that time, Pamela McDonald was the Matron/Office Manager for the Starke County Sheriff's Department. (*Id.* ¶ 12). On May 4, 2023, Plaintiff met with the SBOA and gave statements about her knowledge of fund irregularities and Pamela McDonald's actions

involving the Sheriff's commissary fund and purchasing tools. (*Id.* ¶ 35). Immediately after this meeting, the SBOA met with Pamela McDonald. Thereafter, she was placed on administrative leave and eventually fired on May 8, 2023. (*Id.*).

Plaintiff alleges that she experienced harassment after her grand jury testimony and throughout her participation in the various Department investigations. For example, one deputy threatened to trip her on the stairs, put his middle finger on her nose, and pulled her hair. (*Id.* ¶ 26). There were also various irregularities in her work compensation and overtime pay calculations over a period spanning several years. (*Id.* ¶¶ 27, 38–47). Plaintiff alleges that this harrassment increased after she testified to SBOA auditors regarding Pam's activities, and included various comments and behavior by the McDonalds and others. (*Id.* ¶ 37–47).

On July 28, 2023, Plaintiff was informed that the grant funding for her position now required a master's degree, and that her funding would end in September 2023. (*Id.* ¶ 48). On September 12, 2023, Plaintiff was informed that her position was no longer needed, and that she would not be paid outstanding compensation or overtime. (*Id.* ¶ 53). Plaintiff alleges that after her termination, the master's degree requirement was removed from the new job posting, contradicting what she was told. (*Id.* ¶ 54). She also alleges that when Sheriff Rosa attempted to hire her for a newly created position, the Board asked Sheriff Rosa if the position was intended for Plaintiff. (*Id.* ¶ 58). Sheriff Rosa was then informed that a hiring freeze was in place, even though other employees had been hired around that time. (*Id.*). Six months later, the Board approved a similar

position for another individual who "did not have the qualifications Plaintiff had for [the] position." (*Id.*).

Plaintiff sued the Starke County Sheriff's Department and Starke County, as well as many of their current and former employees, board members, and leaders. Plaintiff alleges a number of constitutional and statutory violations, but the counts relevant to this motion are Counts III (First Amendment) and V (conspiracy to deprive rights).[2] (*Id.* ¶ 22).

## STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007)); *accord McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2013) (a complaint "must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief"). "[A] formulaic recitation of the elements of a cause of action," and "naked assertions" without supporting facts are inadequate. *Id.* (quoting *Twombly*, 550 U.S. at 557). A complaint must contain enough factual matter to raise the possibility of relief above a speculative level. *Id.* at 678. A complaint therefore fails to state a claim if it is not "sufficient to provide the defendant with 'fair notice' of the plaintiff's claim

---

[2] There was initially some confusion as to which specific claims applied to Pamela and Chad McDonald, because there are many defendants and counts in the case. Plaintiff clarified in her Response to the Motion to Dismiss that only Counts III and V are asserted against Pamela and Chad McDonald. (ECF 38 at 3–4). Thus, the Court will only address those counts. Likewise, the Court will not address Defendants' request to dismiss under Rule 12(b)(1), because that argument was asserted only against Count VII, which Plaintiff has now clarified is inapplicable to Pamela and Chad McDonald.

and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

<strong>ANALYSIS</strong>

## A. First Amendment: Retaliation (Count III)

Plaintiff alleges that Chad and Pamela McDonald retaliated against her for her speech, in violation of the First Amendment.[3] Specifically, she alleges that the McDonalds acted to cause her employment termination and engaged in harrassment against her.

To establish liability under § 1983, a plaintiff must "show that the defendants were personally responsible for the deprivation of [her] rights." *Wilson v. Warren Cnty., Illinois*, 830 F.3d 464, 469 (7th Cir. 2016). "A defendant is personally responsible 'if the conduct causing the constitutional deprivation occurs at his direction or with his

---

[3] Plaintiff alleges that Defendants violated her free speech rights under the First Amendment. (*Id.* ¶¶ 93, 114). In addressing Defendants' motion to dismiss, this Court will assume for the sake of this motion that Plaintiff's speech otherwise meets the requirements for protected speech under the First Amendment (i.e., that it was made on a matter of public concern, and not under the employee's official duties, *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016)). At present, there are insufficient facts to make this determination. *See Owen v. Bd. Of Educ. Of Urbana Sch. Dist. #116, No. 20-CV-2010*, 2020 WL 12813968, at *7 (C.D. Ill. Sept. 3, 2020) ("Determining the official duties of a public employee requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description." (citing *Kubiak*, 810 F.3d at 481)). *See also Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

5

knowledge and consent.'" *Id.* (*quoting Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

A plaintiff must also show that the defendant was acting "under color of state law." *Honaker v. Smith*, 256 F.3d 477, 484 (7th Cir. 2001) (citing 42 U.S.C. § 1983). The Seventh Circuit has emphasized that "[n]ot every action by a state official or employee is to be deemed as occurring 'under color' of state law." *Id.* at 484 (quoting *Hughes*, 880 F.2d at 971). Rather, action is taken under color of state law when it involves a misuse of power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 484–85 (internal quotation marks omitted) (quoting *Walker v. Taylorville Corr. Ctr.*, 129 F.3d 410, 413 (7th Cir. 1997)). "As a result, acts by a state officer are not made under color of state law unless they are related in some way to the performance of the duties of the state office." *Id.* at 485. (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990)).

While termination of employment qualifies as a retaliatory action under the First Amendment, *Hoffman v. Dewitt Cnty.*, 176 F. Supp. 3d 795, 807 (C.D. Ill. 2016), harassing speech can also qualify, *Massey v. Johnson*, 457 F.3d 711, 720 (7th Cir. 2006). However, to show that there was a constitutional violation, "the plaintiff must show that the speech 'rose to the level of threat, coercion, intimidation, or profound humiliation.'" *Deeren v. Anderson*, 72 F.4th 229, 235 (7th Cir. 2023) (quoting *Novoselsky v. Brown*, 822 F.3d 342, 356–57 (7th Cir. 2016)).

### 1.  Pamela McDonald

Pamela McDonald was fired months before Plaintiff. Thus, her personal involvement in Plaintiff's termination could not have been "clothed with the authority of state law," which is a prerequisite for liability under § 1983. *Honaker*, 256 F.3d at 485.

However, Plaintiff also alleges that Pamela harassed her while she was still working at the Department. Unlike the claim based on employment termination, these actions do appear to be related to the duties of Pamela's state employment, and thus fall under the scope of potential § 1983 liability. *See Gibson*, 910 F.2d at 1516.  First, Plaintiff alleges that Pamela sent an email to the entire Sheriff's Department stating that no one except uniformed officers could receive overtime compensation. (ECF 1 ¶ 32). Second, she alleges that Pamela included grant information related to Plaintiff's position in her regular timesheet email to the auditor's office. (*Id.*). Third, she alleges she was told by another employee that Pamela had told them to tell Plaintiff she needed to use up her compensation time. (*Id.*). Finally, she alleges various "irregularities" in her compensation time. (*Id.* ¶ 27). As office manager in charge of timesheets, these irregularities implicated Pamela McDonald. (*Id.*).[4]

However, even if they were under color of state law, none of these alleged actions plausibly constitute cognizable retaliatory harrassment for First Amendment

---

[4] Plaintiff also alleges that after she began to look into pay records which Pamela was responsible for, Pamela told her that there would be "repercussions" if Plaintiff continued to "go[] around her" by making direct inquiries from the payment fund manager, Healthlinc. (*Id.* ¶ 31). But this allegation implicates actions which Plaintiff was explicitly instructed to do by her employer. (*Id.*). Thus, they cannot qualify as protected speech under the First Amendment. *See Kubiak*, 810 F.3d at 481.

activity. The alleged email was directed at the entire office, and applied to a wide range of employees—not just Plaintiff. (ECF 1 ¶ 32). *See Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 567 (7th Cir. 2004). Plaintiff does not explain how including contact information in a regular payroll email constitutes a cognizable retaliatory act. (*Id.*). *See Joyner v. Archer-Daniels-Midland Co.*, No. 03-CV-2177, 2007 WL 418921, at *35 (C.D. Ill. Feb. 2, 2007) ("harassment must be objectively and subjectively hostile" (citing *Gentry v. Export Pkg. Co.*, 238 F.3d 842, 850 (7th Cir.2001))). Nor does Plaintiff allege that Pamela personally spoke to her or followed up on the comment about "using up" her compensation time. (*Id.*). These allegations do not rise "to the level of threat, coercion, intimidation, or profound humiliation." *Novoselsky*, 822 F.3d at 356–57.

And while Plaintiff does allege irregularities in her overtime pay, there is no plausible link between the alleged irregularities and Plaintiff's speech. *Kokkinis v. Ivkovich,* 185 F.3d 840, 843 (7th Cir.1999). Plaintiff alleges that she had *never* been paid overtime until shortly after her grand jury testimony in 2022. (ECF 1 ¶ 32). Thus, Plaintiff's overtime irregularities began before Plaintiff's speech, not after it.

In her response brief, Plaintiff also asserts that Pamela "went on to falsely accuse Plaintiff of misusing grant funding." (ECF 38 at 7). But Plaintiff did not actually allege in her complaint that Pamela was the source of these false rumors. (*Id.* ¶ 33). Moreover, there is no allegation that the rumors caused profound humiliation to Plaintiff or harmed her in any way. (ECF 1 ¶ 33). *Novoselsky*, 822 F.3d at 356–57. Thus, Plaintiff's claim does not rise to the level of plausibility. *Iqbal*, 556 U.S. at 678.

## 2. Chad McDonald

Plaintiff fails to show any actions by Chad McDonald that were taken "under color of state law." *Honaker*, 256 F.3d at 484. Plaintiff alleges that after her investigations into Pamela McDonald's alleged wrongdoing, Chad McDonald angrily told her that his "lawyer want[ed]" a copy of the press release when it was ready. (*Id.* ¶ 50). But Plaintiff does not allege that this statement had anything to do with his role working for the Sheriff's Department. Nor does she allege any facts suggesting that Chad McDonald's actions were "related in some way to the performance of the duties of [his] state office." *Id.* at 485. Thus, even if Chad might be liable as a private conspirator, Plaintiff fails to allege any evidence that suggests he could be directly liable under § 1983.

For the reasons discussed above, Plaintiff has not stated a plausible First Amendment Claim under § 1983 against either Chad or Pamela McDonald. Pamela's alleged acts do not plausibly rise to the level of unconstitutional retaliatory harassment. And Plaintiff's factual allegations against Chad McDonald do not plausibly suggest that he was acting under color of state law. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. Furthermore, all of this assumes that Plaintiff's speech is protected under the First Amendment, which is unclear at this point. *See supra* n. 3.

## B. Conspiracy (Count V)

Plaintiff also makes a conspiracy claim against Defendants, alleging that they conspired to retaliate against her for her speech in violation of the First Amendment. To prove conspiracy, a party must show "an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights." *Scherer v. Balkema*, 840

F.2d 437, 442 (7th Cir. 1988). Here, at the motion to dismiss stage, a plaintiff must provide factual allegations from which a jury could infer a meeting of the minds. *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982). These allegations can include direct indicia of an agreement, but they are "more often, circumstantial allegations of an agreement, which are claimed facts that collectively give rise to a plausible inference that an agreement existed." *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 827 (7th Cir. 2019) (citing *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 628–29 (7th Cir. 2010)).

Defendants argue that the conspiracy claim "merely sets forth bare and conclusory allegations of conspiracy." (ECF 34 at 19). But Plaintiff provides a number of concrete facts to support her allegations. She alleges that the object of the conspiracy was her termination and harassment in response to her grand jury testimony and cooperation with the ongoing Department investigations. (ECF 1 ¶¶ 39–41, 61). And she alleges that her termination occurred in the wake of her cooperation in the various investigations involving Pamela McDonald and the Department. (*Id.* ¶ 53).

Plaintiff also alleges several statements by individuals in leadership positions in the County that suggest there was a connection between her termination and her speech. First, she alleges that she overheard Defendant Councilman Black state that there would be "an eye for an eye for these people on this investigation" after Pamela was fired. (*Id.* ¶ 47). Next, Plaintiff alleges that when she was assisting in the investigation of payments that were under management by Pamela McDonald, Pamela stated that there would be "repercussions" if she continued "going around" her to

acquire information on the payments. (*Id.* ¶ 31). Plaintiff alleges that Pamela also told her that Defendant Starke County Auditor Oesterreich would "back her" on the repercussions. (*Id.*). She alleges that Chad McDonald angrily confronted her, telling her that his lawyer wanted "your press release" on the investigation which involved Pamela McDonald. (*Id.* ¶ 50). Plaintiff alleges that Chad discussed with her how Auditor Oesterreich had told him that Plaintiff had reported Pamela McDonald to the SBOA. (*Id.* ¶ 53). These statements at least plausibly give rise to an inference connecting the McDonalds to various other defendants.

The McDonalds argue that they were not in a position to cause Plaintiff's termination. But while this affects a direct claim, it does not foreclose a conspiracy claim: even an individual in no position to complete the target acts of a conspiracy may still be liable if there was an agreement between them and the individuals who could complete the acts. *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 731 (7th Cir. 1998) ("an individual may be held liable for a conspiracy 'even though he was incapable of committing the substantive offense'") (quoting *Salinas v. United States*, 522 U.S. 52, 352 (1997)). And even if Pamela had been terminated at the time the alleged conspiracy occurred, private actors are still liable under § 1983 if they conspire with state actors. *See Alarm Detection Sys.*, 930 F.3d at 825.

And based on Plaintiff's allegations, alleged co-conspirator Defendant Auditor Oesterreich plausibly had at least some decision-making authority regarding the terms and status of Plaintiff's employment. Auditor Oesterreich was one of the three individuals present, along with Defendant Commissioner Binkley and Defendant

11

Sheriff Rosa, at the meeting where Plaintiff was informed that her employment would be terminated. (*Id.* ¶ 53). In October, less than a month after that meeting, Auditor Oesterreich testified before the City Council that the employee handbook had been changed back to restore 40 hours of compensatory time to all Sheriff's Department employees. (*Id.* ¶ 54). Plaintiff alleges that after she was fired and denied compensatory time, Auditor Oesterreich "clear[ed] out" the time clock system to remove evidence of the compensation hours owed to Plaintiff. (*Id.* ¶ 57). Plaintiff also alleges that after she was terminated, Auditor Oesterreich gave repeated statements regarding that decision which Plaintiff alleges were false or inconsistent. (*Id.* ¶ 53–54).

Defendants argue that Plaintiff cannot make a conspiracy claim because all defendants are also state actors, and a conspiracy under § 1983 is not cognizable if there are no private individuals involved. This is an incorrect statement of the law — there is no requirement that a conspiracy claim under § 1983 must have a private defendant. *See Vukadinovich v. Zentz,* 995 F.2d 750, 756 (7th Cir. 1993), *Scherer v. Balkema* 840 F.2d 437, 442 (1988); *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015).

It is of course true that, when alleging conspiracy between public and private actors, it must be shown that there was an agreement between the private and public defendants to hold the private individuals liable under § 1983. *See Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019). It is also true that in some cases, when all defendants are members of the same legal entity and acting within the scope of their employment, there cannot logically be a "conspiracy" between them because a legal entity cannot "conspire" with itself. *See Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623,

632 (7th Cir. 1999)("under the intracorporate conspiracy doctrine a conspiracy cannot exist solely between members of the same entity") (citing *Wright v. Illinois Dept. of Children & Fam. Services*, 40 F.3d 1492, 1508 (7th Cir. 1994))); *Hernandez v. Cwity of Peoria*, 2022 WL 22624877 (finding no conspiracy under § 1983 when the only defendants were the city and police officers who were employees of the city). But that is not the situation presented here. The parties do not allege that the Starke County government and Starke County Sheriff's office are the same corporate entity. Pamela McDonald is a private defendant for purposes of conspiracy because she was not employed by either the County or the Sheriff's office at the time Plaintiff was fired. *See Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1016 (7th Cir. 2000). And finally, a conspiracy theory of liability includes Chad McDonald in his private capacity, because he took no actions under color of state law that would make him directly liable under § 1983. *See Goren*, 156 F.3d at 731.

Thus, on her conspiracy claims, Plaintiff has sufficiently pleaded concrete factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545 (2007). The resolution of certain questions of fact, such as whether Plaintiff's speech was taken pursuant to her official duties and thus is unprotected, may affect this analysis as a matter of law. *See supra* n.3. However, those factual questions cannot be resolved at this early stage. *See Scholes v. Afr. Enter., Inc.*, 838 F. Supp. 349, 356 (N.D. Ill. 1993) ("Factual questions prevent the court from deciding this issue on this motion to dismiss"). A dismissal of Plaintiff's claims under Rule 12(b)(6) is not appropriate at this time.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED** (in part). The Court **DISMISSES** Plaintiff's direct First Amendment claims against Defendants Pamela and Chad McDonald (Count III). (ECF 33). Defendants' motion is **DENIED** with respect to Plaintiff's conspiracy claims (Count V). (ECF 33).

SO ORDERED on March 10, 2026.

/s/ *Cristal C. Brisco*

CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT

14